# EXHIBIT 2

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
---------------------------------------------------- x
```
BRACHA POLLAK and David BENELI     :
on behalf of themselves and all others     :
similarly situated,     : Case No. 3:15cv4025 (BRM/DEA)
     :
     :
     :
     Plaintiff,     :
     : **DECLARATION OF SUSAN J.**
     : **GUEVARA**
     v.     :
     :
PORTFOLIO RECOVERY ASSOCIATES, :
LLC, and JOHN DOES 1–25,     :
     :
     Defendants.     :
```
---------------------------------------------------- x
```

I am making this Declaration based upon my personal knowledge and I am competent to testify as to the matters stated below:

1.     I am the Vice President, Complaints & Disputes at Portfolio Recovery Associates, LLC ("PRA"). I have been an Assistant Vice President at PRA for five years. As an AVP, my primary responsibilities include managing PRA's collection letter process and working with PRA's Information Technology department on system development projects.

2.     I have personal knowledge regarding PRA's processes for identifying accounts that are suitable for litigation and the process by which those accounts are transferred to PRA's Litigation Department.

3.     I have personal knowledge regarding the Collection Letters sent by PRA's Litigation Department.

4.     I have personal knowledge regarding the process by which the Collection Letters are sent and I have personal knowledge regarding the policies and procedures used by PRA's Litigation Department when a consumer disputes a debt.

**PRA's Litigation Department Processes for Sending Collection Letters.**

5.     After PRA purchases a portfolio with individual accounts, PRA attempts to recover the debt through various processes and procedures, which include making telephone calls and sending collection letters.

6.     The initial collection letters PRA uses do not include language regarding potential litigation.

7.     If these procedures are unsuccessful, after a certain period of time, PRA will evaluate accounts to determine whether a particular account is appropriate for litigation.

8.     PRA uses a proprietary process to determine which accounts are potentially suitable for litigation.

9.     Accounts identified as appropriate for litigation are placed with PRA's Litigation Department.

10.     PRA's policy is that it will not sue on an account prior to that account being placed with PRA's Litigation Department.  In other words, a lawsuit will not

be filed against a debtor until the account has been transferred to the Litigation Department.

11. Once an account is transferred to PRA's Litigation Department, an attorney does not immediately review the account.

12. Instead, PRA attempts to collect the debt through collection letters that are sent from the Litigation Department.

13. PRA uses these collection letters in an effort to avoid filing suit, if at all possible.

14. The first letter PRA sends is identified as the LL1 Letter and offers multiple settlement options to the debtor.

15. The LL1 Letter provides the debtor approximately 30 days to respond.

16. If a debtor accepts any of the offers in the LL1 Letter, PRA will honor those settlement options.

17. If no response is received by PRA, PRA's Litigation Department sends a second letter, the LL2 Letter.

18. The LL2 Letter includes a single and less favorable settlement offer and a different deadline by which a debtor must respond.

19. If a debtor accepts the settlement offer in the LL2 Letter, PRA honors that settlement offer.

20.    If the LL2 Letter goes unanswered, then an attorney from PRA's Litigation Department will review the file prior to initiating a lawsuit.

21.    Once the reviewing attorney determines that the account is still appropriate for litigation, either an attorney employed by PRA or an external attorney hired by PRA will file suit.

22.    If a debtor disputes the debt after the debt has been transferred to PRA's Litigation Department, PRA's policy is to remove that account from the litigation process while the dispute is pending.

**Pollak's Account.**

23.    In 2008, Plaintiff entered into an agreement for a credit card with U.S. Bank, N.A. ("U.S. Bank") with an account number ending in 0650.

24.    PRA acquired Plaintiff's account from U.S. Bank on August 25, 2014.

25.    After attempting to collect on the debt and after receiving no response from Plaintiff, PRA transferred the debt to its Litigation Department on December 5, 2014.

26.    After Plaintiff's Account was transferred to the Litigation Department, PRA sent the LL1 Letter dated December 8, 2014 to Plaintiff.

27.    At the time PRA sent the LL1 Letter, an attorney from PRA's Litigation Department had not reviewed Plaintiff's file.

28.    PRA received no response from Pollak regarding the LL1 Letter.

29.     After the expiration of the settlement options outlined in the LL1 Letter, PRA sent Plaintiff the LL2 Letter dated January 6, 2015.

30.     At the time PRA sent the LL2 Letter, an attorney from PRA's Litigation Department had not reviewed Plaintiff's file.

31.     PRA received no response from Pollak regarding the LL2 Letter.

32.     On February 17, 2015, Plaintiff's account was placed with a PRA attorney.

33.     On March 17, 2015, a PRA attorney authorized suit to be filed on Plaintiff's Account.

**Beneli's Account.**

34.     In 2011, Beneli entered into an agreement for a credit card with Citibank, N.A. ("Citibank") with an account number ending in 8750.

35.     PRA acquired Plaintiff's account from Citibank on October 20, 2014.

36.     After attempting to collect on the debt and after receiving no response from Beneli, PRA transferred the debt to its litigation department on March 5, 2015.

37.     After Plaintiff's Account was transferred to the Litigation Department, PRA sent the LL1 Letter dated March 9, 2015 to Beneli.

38.     At the time PRA sent the LL1 Letter to Beneli, an attorney from PRA's Litigation Department had not reviewed Plaintiff's file.

39.     PRA received no response from Beneli regarding the LL1 Letter.

40.     After the expiration of the settlement options outlined in the LL1 Letter, PRA sent Beneli the LL2 Letter dated April 7, 2015.

41.     PRA received no response from Beneli regarding the LL2 Letter.

42.     On May 14, 2015 Beneli's account was placed with a PRA attorney.

43.     On June 15, 2015, before PRA filed suit on the account, Beneli disputed the debt with PRA.

44.     As a result of this dispute initiated by Beneli, PRA did not file suit on Beneli's account.

Executed on April 6, 2017.

Susan Guevara

28622190